Arlice James **HUFFMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42596.

Court of Criminal Appeals of Texas.

Feb. 25, 1970.

David Ball, Jr., Houston (Court Appointed) for appellant.

Carol S. Vance, Dist. Atty., and James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for murder; the punishment, death.

The appellant in his brief presents the following:

"Defendant contends there are three general grounds requiring reversal of this cause:

1. Improper selection of the jury.

2. The method used to allow Gladys Ella Prather to qualify as a competent witness against Arlice James Huffman.

3. Several rulings by the trial judge concerning the admissibility of certain testimony and evidence.

For convenience and clarity, each general ground will be discussed separately and specific points of alleged error will be examined under each general ground:"

In urging the improper selection of the jury, the appellant contends that the trial court erred in excusing five prospective jurors because they did not believe in the death penalty and that such action was in violation of the law expressed in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. These prospective jurors were: Lasater, Jordan, Smith, Gates, and Wardell. Also, he contends that the trial court erred in excusing the prospective juror Joubert because she would not consider the minimum penalty even though she could assess the death penalty in a proper case.

The state gave proper and timely notice that it would seek the death penalty.

An independent examination has been made of the voir dire examination of all the prospective jurors at the trial.

Before the voir dire examination began the trial judge instructed the entire panel pertaining to their duties and the procedure which would be followed in the selection of the jury. The judge personally began the voir dire by examining each prospective juror separately in the absence of the panel. He first asked if the juror understood the instructions which he had given to the entire panel. Then he informed him of what constituted the offense of murder with malice aforethought and the range of the punishment which could be assessed in the event the defendant was found guilty. And further, whether he had any conscientious scruples against the imposition of the death penalty as the pun-

ishment for crime in a proper case. Also, he, at times, instructed them as to the presumption of innocence, circumstantial evidence, and common-law marriage.

This Court's examination of the 1365 pages of the voir dire of the jury reveals that 65 prospective jurors were excused for having conscientious scruples against the imposition of the death penalty; 12 were excused for having prejudice against assessing a two-year term as punishment for murder, and 4 were excused for having a prejudice against the law of common-law marriage. Six prospective jurors were excused by agreement. Six others were excused for miscellaneous reasons. The appellant exercised 12 peremptory challenges, and the state made 7 peremptory challenges. A total of 124 prospective jurors was examined before 12 were chosen to serve on the trial jury.

The contention of the appellant that the trial court erred in excusing the 5 prospective jurors is here considered:

■ Mrs. R. D. Lasater testified that she was conscientiously opposed to the imposition of death as a punishment for crime in all cases and could not impose such punishment for the offense of murder with malice aforethought. After the state had challenged Mrs. Lasater for cause, the appellant asked to take her on voir dire to further explore her feelings about the death penalty as a proper penalty in the case. The court replied that in light of her answers to the court's questions the request would be refused. The court should have granted the request to further examine Mrs. Lasater.

■ The voir dire examination of Lasater was made only by the trial court. No questions were addressed to her by counsel for the state or the appellant. Her testimony on voir dire was clear, positive, unequivocal, and without reservation. In light of the instructions given her by the trial court, the court's opportunity to observe her and to hear her answers, and the

fact that the state exercised but 7 of its 15 challenges, the excusing of Lasater on the state's challenge would not constitute reversible error. Pittman v. State, Tex.Cr. App., 434 S.W.2d 352; Scott v. State, Tex.Cr.App., 434 S.W.2d 678; Whan v. State, Tex.Cr.App., 438 S.W.2d 918.

Ford Smith, Jr., after having the law of murder with malice aforethought and the punishment prescribed therefor explained to him by the court and counsel, repeatedly stated that he could not impose the penalty of death based on circumstantial evidence. The appellant's counsel did not examine Smith, made no request to do so, and was not refused the right. When the court excused Smith upon the state's challenge for cause, appellant's counsel asked that his exception be noted for the record.

The voir dire of the prospective juror Gates reveals that he could not impose the death penalty based on circumstantial evidence. Appellant's counsel did not examine Gates, did not ask to do so, and was not denied the privilege. When Gates was excused upon the state's challenge for cause, the appellant did not object or note his exception to such action of the court.

The prospective jurors Jordan and Wardell testified that they could not impose the death penalty where the defendant's guilt was shown only by circumstantial evidence. The appellant did not examine Jordan or Wardell, was not denied this privilege, and never expressed any reason for his failure to do so. Appellant asked that his exceptions be noted when the court excused Jordan and Wardell.

■ It is concluded from the record that the trial court did not err in sustaining the state's challenge to these 4 jurors.

There were no restrictions or limitations at any time pertaining to the examination, acceptance or rejection of any of the prospective jurors other than Lasater. The voir dire examination does not reveal that there was any plan, pattern, scheme, or systematic exclusion of any qualified juror or jurors.

In Pittman v. State, supra, this Court said:

"If the juror's answers be equivocal or qualified, further interrogation is per-. missible in order to ascertain his viewpoint. 35 Tex.Juris.2d., Jury, Sec. 115, p. 168. The appellant here made no such request for further interrogation. It has long been the holding of this Court that if it is doubtful whether the juror had conscientious scruples in regard to the infliction of capital punishment, the court's action in sustaining the State's challenge for cause on that ground will be sustained on appeal. Burrell v. State, 18 Tex. 713; Sawyer v. State, 39 Tex. Cr.R. 557, 47 S.W. 650; Myers v. State, 77 Tex.Cr.R. 239, 177 S.W. 1167; Vickers v. State, 92 Tex.Cr.R. 182, 242 S.W. 1032; see also Article 35.21, V.A.C.C.P."

Further, in Scott v. State, supra, this Court held:

"The fact that one or more veniremen may have been excused on challenge for cause without a full showing that they would not in any case vote for the death penalty does not mean that the jury was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or that the state 'stacked the deck' against appellant.

"It means simply that counsel for the defense did not see fit to examine them further, either because he did not want the particular juror or because he was satisfied that they understood that, having scruples against the death penalty, they would not consider voting for the death penalty in any case."

We find no violation of the rule in Witherspoon v. Illinois, supra.

■ It is contended that the trial court erred in excusing the prospective juror Joubert who testified that if she found a person guilty of murder with malice aforethought, she could not under any circumstances assess the punishment at a term of two years.

The state challenged on the ground that she could not follow the law authorizing a penalty of two years.

■ The appellant than stated to the court that, "Under the new code that's not proper grounds for the state to challenge —."

The court sustained the state's challenge and the appellant asked that his exception be noted.

Art. 35.16, Vernon's Ann.C.C.P., provides:

"(b) A challenge for cause may be made by the State for any of the following reasons:

\*　　\*　　\*　　\*　　\*　　\*

"3. That he has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment.

"(c) A challenge for cause may be made by the defense for any of the following reasons:

\*　　\*　　\*　　\*　　\*　　\*

"2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor."

The reason given by the state for challenging Mrs. Joubert may seem hard to believe in that notice had been given that the state would seek the death penalty. Yet, that reason may be valid in fact when it is considered that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony; and it is upon this testimony that the jury must assess the punishment if they find the defendant guilty. It is evidence that a two-

year term is a definite phase of the law which is authorized by the plain provisions of the statute. In our adversary system either a prosecutor or a defendant and his counsel may, at the close of the evidence in the case, be willing to settle for a two-year term rather than a mistrial because of a hung jury. The defendant and the state as is shown by the provisions in the two sections of the statute which refer to punishment have the right to have the punishment assessed within the limits prescribed by law after a finding of guilty. This ground of error is overruled.

In his second ground of error the appellant contends that the trial court erred in qualifying Gladys Prather as a competent witness to testify against the appellant in that (1) the judge should have determined the witness's competency without submitting the issue to a jury, or (2) the judge should have submitted this issue to the jury in the form of special issues, or (3) this issue should have been submitted before the case in chief was tried to a different jury from the one that determined the guilt or innocence of the appellant.

The trial court developed the issue of the competency of Gladys Prather to testify against the appellant in the following manner. At a pretrial hearing, the court heard evidence and argument concerning the appellant's contention that Gladys Prather was the appellant's common-law wife and was therefore not competent to testify as a witness against him under Article 38.11, V.A.C.C.P. The court ruled that there was an issue as to whether Gladys Prather was the appellant's common-law wife and that issue would be determined by the jury. Gladys Prather's testimony was heard by the jury as was other testimony relating to the issue of whether Gladys Prather was the appellant's common-law wife, and the court in its charge gave instructions defining common-law wife and requiring that in the event the jury found that Gladys Prather

and the appellant were actually man and wife they could not for any purpose consider Gladys Prather's testimony.

■ The procedure followed by the trial court in this case is the procedure that has traditionally been used in determining the competency of a witness, and it has been approved by this Court. The trial court did not err in following this procedure. Almaraz v. State, Tex.Cr.App., 377 S.W.2d 197; Krzesinski v. State, 169 Tex.Cr.R. 178, 333 S.W.2d 149; Bell v. State, 137 Tex.Cr.R. 401, 129 S.W.2d 664; Welch v. State, 151 Tex.Cr.R. 356, 207 S.W.2d 627. The appellant's second ground of error is overruled.

Appellant, in his brief, presents the following as his third claim of error:

"Several rulings by the trial judge concerning the admissibility of certain testimony and evidence.

"Defendant urges and presents to this Honorable Court that each and every of Defendant's Bills of Exception numbered 1 through 95 and indexed beginning on page 73, Vol. 1 of the record is ground for reversal."

■ The general reference directing the search of a 1746 page record for the "Several rulings by the trial judge concerning the admissibility of certain testimony" does not meet the requirements of a ground of error authorizing a review on appeal under Art. 40.09, Sec. 9, V.A.C.C.P. Keel v. State, Tex.Cr.App., 434 S.W.2d 687; Dailey v. State, Tex.Cr.App., 436 S.W.2d 346; Shirden v. State, Tex.Cr.App., 439 S.W.2d 348.

Due to the gravity of this cause, the transcript of the evidence has been examined and considered and no error is shown.

The judgment is affirmed.

MORRISON, J., not participating.